We'll hear argument in three cases. A fourth case will be submitted without argument on the briefs later today. That fourth case is in Appeal 2007-3272, El-Kassir v. General Services Administration. Before calling the first case, I'd like to just observe as a historical note that early, at least in my own tenure on this court, we had three women judges. This was in the late 80s. And we once again have three women judges among our twelve active judges in this court, two of whom I'm privileged to be on this panel with. I don't believe we've yet had an all-female panel of Judges Newman, Prost, and Moore, but since we draw panels at random, I suppose someday we will have such a panel. In the meantime, I'm very pleased to join my two sisters on this panel. We'll hear argument first in Smith v. Department of Veterans Affairs, Appeal 2007-7222. Ms. Cessna, good afternoon to you. Welcome. Please proceed. May it please the Court. We're here this afternoon on a question of interpretation of 3.321, which is the extra scheduler rating in the Veterans Disability Law for essentially marked interference with employment. And obviously you've read the briefs, and so I'm not going to go into great detail about exactly what we've written in our briefs. I was going to spend my time this afternoon based on some of the issues that I thought might be sticking points for you in our case. Well, are you essentially appealing from a single sentence in Judge Lance's opinion? No, I think the CABC had three different findings that it was relying on in its opinion. First of all, the finding that the inability to work in different areas of employment didn't constitute marked interference for the purposes of 3.321. And then also the question of whether the veteran had submitted any evidence besides just objective evidence and whether or not that constituted marked interference with employment. And then also the last one was the reliance on the semantic argument, essentially, that the BVA and the CABC relied on an indication that there were no showing of frequent hospitalizations and no objective evidence of marked interference in employment. So those are kind of the three aspects of the interpretation of 3.321 that I wanted to talk about this afternoon. And those were all relied on by the CABC in their opinion. Were all three necessary to the conclusion, the actual decision by the Veterans Court? I believe so, yes. I mean, they were reviewing the BVA's decision, and so some of that went to the BVA's decision. And then certainly the question of what constitutes marked interference with employment I think would be required by the CABC decision for the simple fact that obviously if the veteran is submitting something that doesn't even qualify as marked interference with employment, then there's no reason to worry about whether or not the BVA has considered that if it doesn't even qualify as a matter of law underneath that regulation. Well, one of the things that the CABC said was there is no objective evidence that it has a marked interference with employment. Is it your view that there was objective evidence or that such objective evidence is not necessary? Our contention is that objective evidence is not the only kind of evidence that can be used to talk about marked interference with employment. Specifically, what we're talking about is lay statements, that the veteran's lay statement should also be potentially considered under the auspice of the 3.321 considerations. What does that actually mean, that the veteran's lay statement has to be considered, has to be accepted, or has to be discussed in the opinion? What are you really requiring here? It has to be weighed, essentially. Well, why do you say it wasn't weighed here? Well, our reliance, and this is, I think, part of the problem with the CABC's opinion, is that it relied on the BVA's interpretation. The BVA and the CABC were both kind of unclear as to... Isn't it very clear that the Board discussed and relied on your client's testimony? I think there's a difference between the Board reiterating the evidence, as opposed to whether or not they actually weighed that in the consideration of the 3.321 analysis. Well, how can you say they didn't weigh it? They say, by itself, it's not adequate to support it. Isn't that clearly a weighing? By itself, it doesn't say we're rejecting it and we're not even considering it. By itself, it's not sufficient to support it. Our contention is that it could be. It doesn't require under Buchanan and Jandro that lay statements don't have to be corroborated by medical evidence in order to qualify as compliant under that. There wasn't anything, though, was there? I mean, he says, maybe I could have applied for a more strenuous job or a job in law enforcement or something else, but was there any evidence that he had done so and been turned down because of this physical situation? Well, that's the unique instance in this case where the veteran... The entire argument on 3.321 is based on basically the veteran's statement that for his disability that he would have been able to obtain employment as basically a police officer or something of that nature because of his military experience, and that was basically the only reason why. You should be sure to answer the question that was actually asked. I'm sorry, I thought I was. You're saying that there was no... He didn't try and get another job. He just said, if I were to have tried for such a job, maybe they wouldn't have given it to me because maybe they would have thought that I wasn't capable of it because of this experience? Right. In this particular case, the only evidence in 3.321 was his particular statement. There was no confirmation of that. Why should the board have even assumed that he would otherwise, then for his impaired knee, qualify to be hired as a police officer or a prison guard? Well, and I guess that goes to whether or not they needed to... No, no, the question is what in his personal record would make him look qualified to be accepted to be a member of the Washington, D.C. Metropolitan Police Department force, for example? Well, I think he's relying on the fact that he has extensive military experience, that that would be a factor that would help qualify him for that position. Military experience as a what? I mean, if I'm a howitzer loader, that doesn't have anything to do with police work. If I operate a crane for the Army, that doesn't have anything to do with police work. So I wouldn't think that I would be qualified on exiting the service to be hired by the Metropolitan Police Department in Washington, D.C., would it? Well, and Your Honor, I have to admit, I'm actually not exactly sure if his MOS in the military was any kind of military police officer. I'll have to look at that. Your brief says it was, I believe. I'm sorry? Your brief says, I think, that he did have experience in the military doing police work. Police work. That's what I was going to have to check on. I wasn't real sure of that right off the top of my head. But certainly, assuming that your part in our brief is quite obviously, then any experience in the military that he would have that would be specific to military police officer or anything like that would definitely qualify him or be evidence of qualifying him. How does the board or the CABC supposed to know there? Is that not employment people? How are they supposed to evaluate whether or not some sort of experience in the military is necessary or sufficient to get a particular job with the D.C. Metropolitan Police? Well, and I think that goes to their ability to weigh the evidence. If they're requiring, there's a difference between them weighing that veteran's statement and saying, okay, well, based on the veteran's statement, we're not sure about this, as opposed to saying we're not going to rely on the veteran's statement solely because there's no objective evidence to qualify that. It's not a question of objective versus subject. It's a question of evidence of any probative force. It seems to me Judge Newman has a very good point. If he had applied to a particular police department and they had evaluated his application and communicated back to him, we find you fully qualified in every way, except we're worried that with your bad knee you won't be able to stand or run or climb or do other things that might be required of a police officer, so for that reason we're going to have to reject your application. He could have done that. He didn't do that. And you seem to be saying it doesn't matter. If he says he thinks he might qualify to be a police officer, that's enough, and it has to be accepted as sufficient. What's the basis of saying it has to be accepted as sufficient? I'm saying that it doesn't necessarily have to be accepted as sufficient. I'm saying that the pure fact that there isn't objective evidence to qualify that should be a factor in the weighing that shouldn't automatically disqualify the veteran's statement to be considered in the context of your case. They did disqualify it. They said by itself it's not sufficient. They didn't say we're not going to consider this because we don't consider the evidence. They considered it and they said, it seems to me they did exactly what you're saying they should have done, which is consider it and weigh it and find that it was insufficient. Your Honor, I think, as I said, I think the perspective that we're coming from is that from the context of their conversation, it seemed like they rejected the veteran's statement outright purely for the lack of objective evidence to substantiate it as opposed to perhaps evaluating the veteran's statement on its own. What do you mean rejected? Do you mean excluded it? Erased it from the record and said it may not be considered in the weighing? They didn't say any such thing. Why should we conclude that they rejected it in the sense of excluding it altogether as incompetent evidence? I think based essentially on their finding that without any objective evidence that the veteran's statement couldn't qualify under 3.321. I guess what we're arguing is essentially that a lay testimony needs to be considered in the context of 3.321, that merely not having the objective evidence to support that contention is not going to be sufficient. It seems to me your view of the law could be summarized as follows, but if I'm mistaken, then I need you to tell me. Your view of the law seems to be, I'll pretend I'm the veteran, that if I can think of 20 jobs that I would like that I assert that I'm qualified for, that I can then get extra consideration for higher ratings for my disability, my hurt knee, occurring in the service, because I maintain in my statement to the Veterans Department that that knee injury is what's blocking me from those 20 jobs that I would like to have. Is that your view of the law? My view is that it is up to the court to weigh that statement, but it doesn't necessarily mean that that statement is not going to go towards 3.321 consideration without that objective evidence. Obviously, having the objective evidence is going to make your case a lot stronger. I'm not saying that that won't. Where in the history of the statute or the regulation is there any indication that the Congress was concerned with giving the veteran his preferred choice of job, as opposed to making sure that he might get extra compensation if he or she is not able to get any job, can't earn a proper income, or can't earn a living wage? Well, Your Honor, I think that that actually comes from the context of the concept of 3.321 as being an extra scheduler rating specifically to make up for those areas in which the regulations don't take into account. For example, under 4.1... The question is, where in the legislative or regulatory history is there an indication that the authors intended to give the injured servicemen his or her choice among numerous jobs of interest, or else they get extra compensation? I think specifically what you're talking about, I think, is the part in 3.321 that talks about average earning capacity, that if the veteran has the capacity to earn... No, I'm not talking about anything in the reg. I'm saying what can you point to in the history leading up to the regulation that would suggest that the Congress or the Veterans Department wants to give the injured veteran his or her choice among many possible jobs? I guess what I'm taking issue with is the concept of giving him his choice, as opposed to what he has the potential to earn. That if it weren't for his service-related injury, that he would otherwise have the capacity to earn a certain level of salary. Your client's already earning a good wage as an armored truck driver and has had no trouble performing the duties of that position because of his injured knee. So he has to be arguing that that's not good enough, I deserve extra compensation because a different job that I don't hold, but I'd rather hold, I may not be able to get because of my hurt knee. That he maintains that he's also qualified for and he has the potential for a higher earning capacity. Is there any proof that the earning capacity is higher here? Other than the veteran's statement, no. Do you want to save the rest of your rebuttal time? Sure. I would like to, yes. Thank you. Ms. Holder. Good afternoon to you. Good afternoon, Your Honor. Welcome back to our court. You're here on a regular basis. Thank you, Your Honor. May it please the Court, I will first address the panel's concern about the issue of whether the Veterans Court required the veteran to show objective evidence that he could not obtain a higher paying job. First of all, I think it's clear from, it is true that the regulation does not include the word objective, and so to the extent that that word objective appears in the Veterans Court's decision and the board's decision, it appears to be surplusage. But if the court looks at the board's decision on page 510 of the joint appendix, it's very clear that the board actually says, we are required to look at your lay testimony and your lay statements to determine whether a referral for this extra schedule of rating is warranted. So the board did acknowledge this responsibility. What is the government's view, answer to Judge Michelle's hypothetical? I mean, is the government's reading of this regulation, would it apply hypothetically if there's undisputed evidence that the appellant or someone else is earning $40,000 a year now, has a 20% disability of another $5,000 a year, but is otherwise qualified, goes to D.C. Police Department for a $60,000 a year job, and they say, absent your knee problem, we would hire you. Is the government's position that that falls within this regulatory provision and he's entitled to more money? No. Then why not? And the reason is this, Your Honor. The whole purpose of the general rating system is to provide compensation to the veteran for the average impact of that disability on civilian occupation. So it will be the case that for some veterans, it will not impact their earning capacity at all. And so are you saying when you say it's the average, if a veteran is very severely injured, the compensation nonetheless is no more than the average impact? I had assumed that this whole elaborate structure is designed to recognize individual needs. No, Your Honor. The system takes into account the individual veteran's disability and says, okay, given that individual disability, how would that impact your ability to find civilian occupations in the average? In the average, or in fact, I had thought that the problem here was in fact a failure of proof. And if this veteran had done the things that we're talking about, which as far as we can tell weren't done, they might very well have been a different factual situation for the trier of fact to consider. Certainly if the... Let's say he'd been a military policeman and he applied for police work and was told too bad your knee keeps you from doing this work. Would that not have presented a factual situation that requires consideration on different premises than the facts that we have before us? No, Your Honor. And the reason for that is that, as is noted in our briefing and the general counsel's opinion, normally the mere statement that a veteran is unable to obtain a certain job is not adequate, is not normally sufficient for a referral for this extra scheduler. Normally why? Because of a failure of proof or as a matter of law? As a matter of law. And your view is that because there's a regular rating schedule, for instance, you lost one finger so you get 15%, and that rating schedule has thought through what they think, and this is a question, has thought through what they think the employment impact, the cost of that? Yes, Your Honor. And again, we gave an example in our brief that if a veteran loses a foot during service, that would be accorded a 40% rating. That is intended to compensate the veteran for the average impact that that loss of the foot will have on that veteran's ability to obtain civilian employment. Well, what's the impact of the job he held as a driver of an armored vehicle? My understanding, Your Honor, is that that job is his current or was his occupation after his service in the military. My understanding is that's what he was doing. That was his employment at the time he applied for this increase in the level of monetary compensation because of the service-connected injury. So my question to you is what's the significance of the fact that he already had a job? Is that proof by itself that he's not unemployable? Because he's employed. No, Your Honor, and I want to make a distinction, Your Honor, because the issue of whether a veteran is unemployable is covered under a different regulation. It's covered under the TBIE regulation. So what's marked interference with employment? That's what the regulation says. What is marked interference with employment? What is clear that marked interference with employment is not is circumstances specific to the veteran, such as that veteran's employment history or education. An example of what marked interference with employment would be would be if the veteran's disability, for example, you have a rating for that particular disability or condition, that disability or condition requires the veteran to take medication, for example, and that medication might make you drowsy and make you unable to operate heavy machinery. That would create a disability picture, and that's the language that's used in the regulation, a disability picture that may not be adequately addressed in the normal schedule or ratings. But what if that veteran had a job as a clerk and he didn't have to operate any heavy machinery? He came to work on the metro subway and he sat at his desk and he filled out VA forms? What happens to that veteran? Well, I suppose that if the veteran requested consideration of this extra schedule or rating, and I want to emphasize this is such an exceptional or unusual rating that not even the regional office can assign this rating. We read the regulation. Only two rather high-level Veterans Department officials are permitted to award it. We know that. But the fact that it's exceptional just means it's for the exception. The opposing counsel says, well, my client's the exception. And you say, no, he isn't. We're trying to find out why you're so sure he isn't. The reason I'm saying that he's not is because the circumstances that Mr. Smith's presenting, I cannot obtain a police officer position because of my knee condition, is precisely what the normal scheduler rating is designed to accomplish. It's designed to compensate for the fact that because of your condition, there are certain jobs that you're not going to be able to perform. But what if his knee hurt so much that he had to take medication all the time and he couldn't even perform an armed truck driver's job? So he's incapable of doing anything other than working a few shifts, sitting down. Would that be sufficient? That may be sufficient for a referral to determine whether that extra scheduler rating may be warranted because the disability picture is presenting something such as frequent hospitalizations or marketing interference with employment. And I'm sorry that I don't have more examples of when marketing interference with employment would occur, but I think that is a result of the fact that this is such a rare occurrence that there's just not a lot of examples. Was the decision here that this particular veteran had not shown that he was eligible to be considered under this exceptional scheme and not on the regular schedule versus he was eligible and they considered all the factors and concluded that the specific factors of his case didn't warrant the 30% disability that he was seeking under this special non-scheduler system? It appears from the Board's decision and the Veterans Court's decision that what those entities said was the statement that you cannot obtain any particular types of employment due to your disability does not fall under what the regulation is designed to accomplish. So then is the answer to my question that they ruled that he was not eligible to even be in that special process? Hadn't shown that he got in the gateway? Correct. But I'm a little unclear, though. Is that because he didn't put on any objective evidence of that circumstance or because even if he had proven that objective evidence, that would be insufficient to constitute a marked interference? I believe that it certainly seems that, like I said, the word objective does not appear in the regulation. So the Board and the Veterans Court were certainly required to consider Mr. Smith's statements about his inability to obtain a certain position. It would appear that what the Board did and what the Veterans Court did was say, even assuming that this is true, even assuming you brought objective evidence that you could not obtain this position, that does not qualify as presenting such an unusual disability picture such that application of the normal scheduler rating would be impractical. You say provided he can obtain some sort of job no matter how low-paying? Yes, right. And again, because... It's not a black and white, is it? Isn't it attuned? You know, the cases that reach us are really sort of sparse when they turn on their facts. But we see so many in which the ratings keep changing. The people, they obtain increased ratings and sometimes the ratings are decreased. But you're telling us that, no, you get whatever your disability is, there is a rating that applies, and that's it, and evidence of whatever the additional circumstances are is irrelevant? That may seem harsh, Your Honor, but I think that the correct answer is yes. I would have thought you would say, no, as the disability got worse, the rating would go up under the normal scheduler system, and therefore the compensation would go up proportionately. That was going to be my next sentence, Your Honor. Yes, that's exactly correct. As a disability progresses, as it becomes more serious, as there's a... So we're not talking about whether he can get more money under the regular system. We're only talking about whether he gets into the special system not bound by the regular schedule, as they call it. Yes, Your Honor, and I would emphasize that even once the veteran gets to the extra scheduler rating system, that veteran is still assigned a rating, whether it's a 30% rating or a 40% rating. It's just based on a different disability. What do you take interference to mean in the phraseology of the regulation? Obviously the whole phrase is marked interference with employment, but just focusing particularly on the word interference, what does that mean? He can't get any job, or he can only get a low-paying job, or he can only get a part-time job. What does it really mean? Your Honor, I think that any of those... any evidence that would have presented that the disability was causing difficulty, you know, again... Well, how about if it causes a marked difference in income? Judge Prost had an interesting question with a $20,000 difference, but let's make it a little more dramatic. Let's say that he has a job now by which he earns $25,000 a year, and let's say he's qualified but for the effects of his injury for a job that would pay $125,000 per year in salary. That's a huge difference. Now, would that sort of income differential qualify as a marked interference in employment? No, Your Honor. Well, what would? Tell us what would. We know now an awful lot of what wouldn't meet that criterion. Give us an example of what would meet that criterion. The two examples I can give the court, again, would be if the disability required the veteran to take medication, then that medication may impact their ability to perform even more jobs than just the condition itself would. Another example that was a veteran's court decision was a veteran who had a foot condition that warranted a 20% rating, let's say, but that foot condition had a horrible infection that had a bad odor, and that would impact his ability to obtain certain types of employment. In footnote 2 of our brief, we pointed out to the court that in this statement, this provision that the ratings be based on the average impairments of earning capacity in civilian occupation, that was changed before then. Ratings were based upon the impact of the disability on the individual's civilian occupation prior to service. So maybe that can address the court's concern. There was a conscious decision to apply the ratings across the board. Every veteran, if they have a disability that meets, say, 20%, they get the same amount of money regardless of what their actual occupation is. That was a decision that President Roosevelt made in 1933 that's been enacted into statute at 38 U.S.C. 1165. Except it has this escape clause to it, and we're just trying to figure out who gets to escape the normal system and who's kept in it forever. And the issue is whether the person's, the veteran's individual condition or disability warrants that escape, not their particular circumstances such as their education level or their occupational history or where in the country they live in, which may present more difficulties finding certain types of jobs. All of those things are by regulation not to be considered. It's only the particular disability picture, the actual condition and the results of that condition. Can I ask you about another aspect of the regulation, which is who gets to approve what? Because I read it and it says where the scheduler evaluations are found to be inadequate. So it seems to me that does contemplate either the board or the CAB or someone making a threshold determination of inadequacy, but it seems to me they don't have the authority to approve an increase. So how does it work? They have to find an inadequacy, and then it gets sent back to this individual. And is he required? It says he's authorized to approve, but it doesn't seem to mandate approval. So does he have total discretion then to decide whether and how much to approve? Yes, Your Honor. That ultimate decision is left up to the responsibility of those two positions. With no limits? Unreviewable? Is that reviewable? That I'm not sure of. I would suspect that the answer would be no, just as the normal decisions as to whether a veteran is entitled to a certain rating is not reviewable. So someone can go up here on the issue of whether or not the board or the CABC was correct in determining whether or not the evaluation was inadequate. But even if they decide it is inadequate, that's the end of the case. If it goes back to this individual and he says, I don't agree, zero, or 1%, no review. This isn't a trick question. I'm not exactly sure of the answer, so I don't want to mislead the court in any way. I'd certainly be willing to follow up if that's a concern. Just to make sure then that I understand the way it works. So it's really irrelevant that this veteran didn't provide the information, the evidence that I had inquired about before, that even if he had applied for a police job and been turned down because of his knee, it wouldn't have made any difference because of the schedule. Is that right? I believe that's correct, John. So really what sunk his quest for 30% was the very injury itself. His disability picture, as the regulation calls it, just wasn't terrible enough to warrant exit from the schedule and special consideration under the non-schedule method. Yes, John, I think this is... It had nothing to do with his individual circumstances or what other jobs he was qualified for or wanted or how much more those other jobs might have earned. The real problem was somebody with this kind of knee injury can never get off the schedule. No, Your Honor, I'm not saying that. I'm saying that a person with this particular knee condition, if that disability does not show such an unusual disability picture with factors such as frequent hospitalizations as a result of that knee condition or... No, frequent hospitalization is a different leg of this stool. We're talking about the one that marked interference with employment. That's the only leg we're talking about here. There was no assertion by this veteran that he was frequently hospitalized or had any other leg of this stool. He simply said that he had interference with employment. And the veteran's decision-maker said, no, no, he didn't. And it seems to me from all you're saying that his problem is that the knee injury is just not ever going to qualify. His kind of knee injury, whether it's his knee or anybody else's knee, that injury is never going to get you outside the schedule. Yes, Your Honor, and that's because in the ratings schedule, the VA has determined that that particular knee condition warrants a 20% rating. And again, unless there's these additional factors, that's what the regulation provides. We're trying to figure out what are the additional factors, and it's very hard to picture how it would work, very hard to picture a case of a veteran with a limb injury where it would suffice in your view of the reg to get him beyond the scheduler rating to potentially a higher rating under this special system. I agree that it's difficult, Your Honor. And again, I would say that that is a result of this regulation really being limited to exceptional and unusual. How many times has it been used, if ever? That's a very good question, Your Honor. It's been very limited. I have looked through veterans' court decisions to see if there were examples. Well, doesn't the Veterans Department know how often its high-level officials have used this very unusual procedure? I believe the answer is that it's very rare, Your Honor. How rare? How rare? Well, did you ask? Did you try to find out? I did ask, Your Honor. They said they couldn't tell you? No, Your Honor. What did they say? They said that it's a very rare occurrence. Well, very rare is not very precise. It makes it hard to understand whether this regulation is real or it's a kind of a charade, a mirage. Are there any board or CAVC decisions that deal with this or that have found the scheduler evaluation to be inadequate? Yes, Your Honor. That have found it to be inadequate? They found it to be inadequate and referred it back to those individuals. Under this leg of the regulation, interference with employment? Yes, Your Honor. And the example, and I'm sorry, I don't have the name of the case, but the case that I mentioned previously where the gentleman had a foot condition that had a foul odor that would have made it difficult to work around other people. One other example, someone with a migraine who was suffering from prostrating attacks. That would be another example of market interference. All right. Thank you, Ms. Hogan. Ms. Dessner, two minutes for whatever rebuttal you have to offer. Let me just address some of the court's last questions here on what exactly would constitute market interference with employment. In reading this regulation, I think the key is to note that under 4.1, the regular disability readings are essentially there to adequately compensate for considerable loss of working time from the exacerbations or illnesses caused by the veteran's disability. And so if something isn't taken into account under 4.1 and it is due exclusively to the service-connected disability, then it would be our contention that, as a matter of law, under 3.321, it should be considered for market interference with employment. And the difference here is something like with the veteran. For instance, the VA General Counsel's opinion talks about, for instance, if the veteran has a problem with his educational level and that's part of what's keeping him from earning a higher capacity. For instance, if he was a manual laborer who got injured and could no longer perform manual labor and cannot get a higher-paying job because he can't perform his manual labor anymore, but then his education level prevents him from actually getting a better-paying job, that that would not be due solely or exclusively to the service-connected disability. That's because he lacks education level. But in a circumstance where the only reason he can't get a better-paying job is due exclusively under 3.321's language, due exclusively to the service-connected disability, it's our contention that that should qualify him for consideration. So you want us to read marked interference with employment to mean marked interference to working at a different job with higher pay. What we want marked interference with employment to include is whatever the 4.1 doesn't consider, which 4.1 only considers essentially being gone or being excessive illnesses and things like that. And then whatever is not contemplated in that, that is due exclusively to the veteran's disability. So that would open up that a lot larger than what I think the Department of Justice would. We thank you both. We'll take the case under advisement.